**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

GERALD ORTIZ Y PINO,

     Plaintiff - Appellant,

v.

MAGGIE TOULOUSE OLIVER, in her
official capacity as Secretary of State,

     Defendant - Appellee.

------------------------------

NEW MEXICO STATE ETHICS
COMMISSION,

     Amicus Curiae.

No. 25-2016

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:24-CV-00240-MIS-JFR)**

_____

Phillip Patrick Baca (Thomas J. Mescall with him on the brief), Mescall Law Firm, P.C., Albuquerque, New Mexico for Plaintiff-Appellant.

Alexander W. Tucker (Raúl Torrez, New Mexico Attorney General, Seth C. McMillan, Deputy Solicitor General, Santa Fe, New Mexico, Lawrence M. Marcus, Assistant Solicitor General, Albuquerque, New Mexico on the briefs) for Defendant-Appellee.

Jeremy Farris, New Mexico State Ethics Commission, Albuquerque, New Mexico, and Tara Malloy, Campaign Legal Center, Washington, D.C. filed an Amicus Curiae brief for the New Mexico State Ethics Commission in support of Appellee.

_____

Before **HARTZ**, **BACHARACH**, and **CARSON**, Circuit Judges.

_____

**CARSON**, Circuit Judge.

_____

We subject statutes that regulate speech protected by the First Amendment to constitutional scrutiny.  These protections extend to a broad array of topics that go beyond political or electoral speech.  The First Amendment's protections also go beyond the written or spoken word, and encompass expressive conduct—that is, conduct possessing expressive elements.

Plaintiff Gerald Ortiz y Pino raises a First Amendment challenge to New Mexico's Campaign Reporting Act ("CRA"), which regulates his ability to donate campaign funds to certain organizations and individuals.  The district court dismissed Plaintiff's facial challenge to the CRA after it concluded that the Act does not prohibit any speech activity because it does not prohibit political or campaign speech.  The district court granted Defendant Secretary of State Maggie Toulouse Oliver's motion for summary judgment and denied Plaintiff's motion for a permanent injunction.  Exercising jurisdiction under 28 U.S.C. § 1292(a)(1), we conclude that the CRA's prohibition on certain donations facially regulates activity protected by the First Amendment.  We vacate and remand for further proceedings.

I.

To prohibit candidates from converting campaign funds to "personal use," New Mexico—like the federal government and most states—outlaws certain campaign expenditures.  See New Mexico Campaign Reporting Act ("CRA"), N.M.

2

Stat. Ann. §§ 1-19-25 to -36, 1-19-29.1(A). The CRA prohibits *all* campaign

expenditures before listing permitted uses of campaign funds in its subsections. Id.

§ 1-19-29.1(A)(1)–(7).  Relevant here, subsection (A)(1) permits all "expenditures of

the campaign," and subsection (A)(4) permits donations to 501(c)(3) organizations.[1,2]

---

[1] The United States Code defines 501(c)(3) organizations as:
> Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C. § 501(c)(3).

[2] The CRA reads in full:
> A.  It is unlawful for a candidate or the candidate's agent to make an expenditure of contributions received, except for the following purposes or as otherwise provided in this section:
> (1)    expenditures of the campaign;
> (2)    expenditures of legislators that are reasonably related to performing the duties of the office held, including mail, telephone and travel expenditures to serve constituents, but excluding personal and legislative session living expenses;
> (3)    donations to the state general fund;
> (4)    donations to an organization to which a federal income tax deduction would be permitted under Subparagraph (A) of Paragraph (1) of

3

See New Mexico Administrative Code [hereinafter "NMAC"] § 1.10.13.26(A) (explaining that donations under subsection (A)(4) "may be paid only to organizations recognized as tax exempt under Section 501(c)(3) of the Internal Revenue Code of 1986").

Plaintiff is a former New Mexico state senator who has used campaign funds in the past to make expenditures "for charitable purposes not involving 501(c)(3) organizations."  Plaintiff alleges that he made these donations to "use [his] voice" as a state senator "to lend credence" to individuals and organizations and to "broadcast that [they] deserve support."

Consistent with this claimed history of charitable campaign giving, Plaintiff donated $200 in campaign funds to help a high school student attend a pre-law summer program in 2021.  According to Plaintiff, he sought to encourage the student and to "voice [his] support for her[] in pursuing a career in legal advocacy."  Plaintiff reported this expenditure as a "donation to scholarship fund."

---

Subsection (b) of Section 170 of the Internal Revenue Code of 1986, as amended;
(5)    expenditures to eliminate the campaign debt of the candidate for the office sought or expenditures incurred by the candidate when seeking election to another public office covered by the Campaign Reporting Act;
(6)    donations to a political committee or to another candidate seeking election to public office; or
(7)    disbursements to return unused funds pro rata to the contributors if no campaign debt exists.
N.M. Stat. Ann. § 1-19-29.1(A).

4

Defendant discovered Plaintiff's donation as part of a random report examination. Defendant determined that this donation violated the CRA and her office requested that Plaintiff replace the donation with non-campaign funds. Plaintiff refused, arguing through counsel that the CRA's enforcement would violate the First Amendment. Defendant's office referred the disputed donation to the State Ethics Commission and the Attorney General.

Plaintiff sued Defendant in the United States District Court for the District of New Mexico seeking: (1) a declaration that § 1-19-29.1(A)(4) of the CRA is facially unconstitutional; (2) an order requiring Defendant to withdraw her enforcement action against Plaintiff; and (3) injunctive relief preventing Defendant "from enforcing [§] 1-19-29.1(A)(4)'s restrictions on political expenditures for charitable purposes." Plaintiff also sought a preliminary injunction.

At first, the district court granted Plaintiff's motion in part and enjoined enforcement of the CRA against "charitable donations to individuals under [§] 1-19-29.1(A)(4)." The district court construed Plaintiff's challenge to subsection (A)(4) as a facial overbreadth challenge and concluded that he was likely to succeed on the merits because subsection (A)(4) unconstitutionally prohibited a substantial amount of expressive activity.[3] Defendant appealed.

---

[3] The district court understood Plaintiff's claim as a facial overbreadth claim because Plaintiff relied on facial overbreadth cases to establish his standing to bring suit. As discussed below, Plaintiff contends that he did not raise a facial overbreadth claim and instead raised a "traditional" facial challenge to the CRA. Defendant accepts Plaintiff's characterization of his challenge on appeal.

The district court proceeding continued during that appeal.  Defendant sought summary judgment, and Plaintiff sought a permanent injunction.  In considering these motions, the district court reversed course.  Defendant offered an affidavit stating that she considers any expenditures that "convey[] the political viewpoints of a candidate or publiciz[e] their candidacy" to be "expenditures of the campaign" permitted under subsection (A)(1).  Based on this affidavit, the district court concluded that it could not think of any "applications of [§] 1-19-29.1(A)(4) that violate a candidate's First Amendment rights."  App. Vol. IV at 43–44.  The district court granted summary judgment for Defendant and denied Plaintiff's motion for a permanent injunction.

 This did not completely dispose of Plaintiff's claims.  In its order, the district court acknowledged that Plaintiff's Complaint raised an as-applied challenge to the CRA, but that Defendant "reasonably believed [Plaintiff] was asserting only a facial overbreadth challenge."  Id. at 41.  The district court allowed Defendant to file a separate motion for summary judgment addressing Plaintiff's as-applied challenge.

Plaintiff appealed the district court's order "limited to [his] *facial* constitutional challenge."  Id. at 52.  Plaintiff's as-applied challenge remains pending before the district court.

## II.

Before we consider the merits of Plaintiff's facial challenge to the CRA, we must address whether Plaintiff has Article III standing.  Defendant contends that he

6

does not because his injury is not redressable and because his claims are moot.  We

discuss these arguments below.

A.

First, Defendant argues that Plaintiff failed to show that we can redress his

alleged injury.  To exercise the judicial power under Article III, we must ensure that

the plaintiff before us has standing to bring suit.  TransUnion LLC v. Ramirez, 594

U.S. 413, 422–24 (2021).   To establish standing, "a plaintiff must show (i) that he

suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii)

that the injury was likely caused by the defendant; and (iii) that the injury would

likely be redressed by judicial relief."  Id. at 423 (citing Lujan v. Defs. of Wildlife,

504 U.S. 555, 560–61 (1992)).

Defendant characterizes the relief sought by Plaintiff as the invalidation of

subsection (A)(4).   As discussed above, the New Mexico legislature drafted the CRA

such that it prohibits *all* campaign expenditures before listing permitted uses of

campaign funds in its subsections.  Because subsection (A)(4) *permits* campaign

donations to 501(c)(3) organizations and does not prohibit any conduct, Defendant

contends that invalidating this subsection would bar campaign donations to 501(c)(3)

organizations rather than permit donations to individuals and non-501(c)(3)

organizations.  Defendant therefore argues that Plaintiff's requested relief would not

redress his alleged injury.

Defendant's argument fails because it construes our remedial powers too

narrowly—even if we assume she accurately characterizes the relief sought by

7

Plaintiff.  Federal Rule of Civil Procedure 54(c) permits courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  And "[o]nce a right and a violation have been shown, the scope of a [federal] court's equitable powers to remedy . . . wrongs is broad, for breadth and flexibility are inherent in equitable remedies."  Safe Streets All. v. Hickenlooper, 859 F.3d 865, 901 (10th Cir. 2017) (quoting Rizzo v. Goode, 423 U.S. 362, 376–77 (1976)) (emphasis removed).  If enforcement of the CRA's prohibition on certain expenditures violates the Constitution, we have flexibility to craft a remedy to enjoin this enforcement regardless of the New Mexico legislature's drafting choices.  Such an injunction would redress Plaintiff's alleged injury.

B.

Second, Defendant argues that Plaintiff's claims are moot.  Like standing, "the mootness doctrine ensures that federal courts decide only actual cases or controversies."  United States v. Osborn, 921 F.3d 975, 980 (10th Cir. 2019) (citing Brown v. Buhman, 822 F.3d 1163–64 (10th Cir. 2016); U.S. Const. art. III, § 2).  A case becomes moot once the plaintiff "loses a personal stake in the outcome because of some intervening event."  Id. (quoting EEOC v. CollegeAmerica Denver, Inc., 869 F.3d 1171, 1173 (10th Cir. 2017)).  If the plaintiff loses his personal stake in the litigation, a controversy disappears and "the federal court must dismiss the action for want of jurisdiction."  Id. (quoting Jordan v. Sosa, 64 F.3d 1012, 1023 (10th Cir. 2011)).

8

Defendant referred Plaintiff to the Attorney General and the State Ethics Commission for his $200 donation in 2021. But Defendant contends that any controversy stemming from this referral is moot because the statute of limitations has run for criminal prosecution and the State Ethics Commission stated that it would not pursue this matter. We need not resolve Defendant's mootness argument as to this $200 donation because Plaintiff maintains pre-enforcement standing to challenge Defendant's future enforcement of the CRA against him.[4]

A plaintiff has standing to raise a pre-enforcement challenge where he alleges "an intention to engage in a course of conduct" (1) that is "arguably affected with a constitutional interest," (2) is "proscribed by a statute," and (3) "there exists a credible threat of prosecution thereunder." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) (quoting Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298 (1979)). Plaintiff alleges that he has additional campaign funds and that he intends to make similar donations with these funds. Defendant has not agreed to withdraw the referral for enforcement already issued against Plaintiff, let alone disavow issuance of new referrals if Plaintiff were to make similar expenditures. These facts demonstrate Plaintiff's continued personal stake in this controversy, permitting our jurisdiction.

---

[4] Plaintiff's challenge based on his request that Defendant withdraw her referral for his $200 donation remains pending before the district court as part of Plaintiff's as-applied challenge to the CRA.

9

III.

Next, we discuss the scope of and standard for our review. The district court granted Defendant's motion for summary judgment as to Plaintiff's facial challenge, yet the district court has not ruled on his as-applied challenge to the CRA. Ordinarily, interlocutory orders that "do not dispose of the whole case" are not appealable final decisions under 28 U.S.C. § 1291. Dupree v. Younger, 598 U.S. 729, 734 (2023). But "it is well established that we have jurisdiction to review interlocutory orders expressly denying injunctive relief pursuant to 28 U.S.C. § 1292(a)(1)." Petrella v. Brownback, 787 F.3d 1242, 1254 (10th Cir. 2015) (citing Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 974 F.2d 1346, 1351 (10th Cir. 1989)). Where, as here, a summary judgment order "served as the district court's principle legal basis for [denying] the injunction," the summary judgment order is "inextricably intertwined with" the district court's denial of the permanent injunction and we may review the summary judgment order. See Vittoria North America, L.L.C. v. Euro-Asia Imports Inc., 278 F.3d 1076, 1081 (10th Cir. 2001) (quoting Law v. Nat'l Collegiate Athletic Ass'n, 134 F.3d 1010, 1015 (10th Cir. 1998)).

The "dual nature" of the district court's order implicates two standards of review. See United States v. United Park City Mines Co., 827 F. App'x 871, 876 (10th Cir. 2020) (unpublished). We "review de novo [the] summary judgment which serve[d] as a basis for an injunction," EagleMed LLC v. Cox, 868 F.3d 893, 899 (10th Cir. 2017) (quoting United States v. Hartshorn, 751 F.3d 1194, 1198 (10th Cir.

10

2014)), and we review the denial of a permanent injunction for abuse of discretion, Id. (citing United States v. Jenks, 22 F.3d 1513, 1519 (10th Cir. 1994)). Because "a district court abuses its discretion when it 'bases its decision on an erroneous conclusion of law,'" Davilla v. Enable Midstream Partners L.P., 913 F.3d 959, 971 (10th Cir. 2019) (quoting Wyoming v. U.S. Dep't of Agric., 661 F.3d 1209, 1227 (10th Cir. 2011)), we review "embedded issues of law" de novo even under an abuse-of-discretion framework, United States v. Wells, 873 F.3d 1241, 1253 (10th Cir. 2017) (citing United States v. Barrett, 496 F.3d 1079, 1091 (10th Cir. 2007); United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006); United States v. Giles, 213 F.3d 1247, 1248–49 (10th Cir. 2000)).

IV.

We now turn to the merits of Plaintiff's facial challenge to the CRA under the First Amendment. As an initial matter, we must clarify the type of facial challenge that Plaintiff raises on appeal, as well as the scope of Plaintiff's challenge.

Ordinarily a facial challenge to a statute or regulation "cannot succeed . . . unless [a plaintiff] 'establish[es] that no set of circumstances exists under which the [law] would be valid,' or he shows that the law lacks a 'plainly legitimate sweep.'" Moody v. NetChoice, LLC, 603 U.S. 707, 723 (2024) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987); Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008)). The parties refer to this first type of facial challenge as a "traditional" facial challenge.

11

"To 'provide[] breathing room for free expression," the Supreme Court has also recognized a second type of facial challenge in the First Amendment context— known as an "overbreadth" challenge.  See id. (quoting United States v. Hansen, 599 U.S. 762, 769 (2023)).  An overbreadth challenge permits a plaintiff to meet a "less demanding though still rigorous standard," id. (quoting Hansen, 599 U.S. at 770), by showing that "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," id. (quoting Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 615 (2021)).  Regardless of the form of the facial challenge, the Supreme Court has underscored that such challenges are "disfavored." Wash. State Grange, 552 U.S. at 450; see also Moody, 603 US. at 744.

The district court and Defendant previously understood Plaintiff to raise an overbreadth challenge.  Yet on appeal Plaintiff insists that he instead raised a "traditional" facial challenge.  Defendant agrees and asks us to assess Plaintiff's claim under the traditional framework.  Because the parties agree, we evaluate Plaintiff's claim as a traditional facial challenge such that he must "establish that no set of circumstances exists under which the [law] would be valid" or "show[] that the law lacks a 'plainly legitimate sweep.'" Moody 603 U.S. at 723 (citing Salerno, 481 U.S. at 745; Wash. State, 552 U.S. at 449).

Defendant urges us to apply this standard to the CRA in its entirety. According to Defendant, Plaintiff's facial challenge necessarily fails because at least some of the CRA's prohibitions include "personal, non-expressive, non-campaign" expenditures such as campaign expenditures for home improvement expenses.

12

Appellee's Answering Br. at 15–17.   In Defendant's view, such prohibitions do not implicate speech and are thus "plainly legitimate"—dooming Plaintiff's facial challenge under the First Amendment.

It may be true that many of the CRA's other prohibitions are "plainly legitimate," but Plaintiff does not attack these prohibitions.  Instead, he specifically challenges subsection (A)(4)'s "de facto" ban on charitable donations to non-501(c)(3) organizations and individuals.  Plaintiff's "claim is 'as applied' in the sense that it does not seek to strike the [CRA] in all its applications, but only to the extent it covers [donations to non-501(c)(3) organizations and individuals for charitable purposes].  The claim is 'facial' in that it is not limited to [a] particular case . . . but challenges application of the law more broadly . . . ."  See United States v. Sup. Ct. of N.M., 839 F.3d 888, 913 (10th Cir. 2016) (quoting John Doe No. 1 v. Reed, 561 U.S. 186, 194 (2010)).  In these circumstances, we apply a facial analysis, "but only to the universe of applications contemplated by [Plaintiff's] claim, not to all conceivable applications contemplated by the challenged provisions."  Id. at 914 (citing Showtime Entm't, LLC v. Town of Mendon, 769 F.3d 61, 70 (1st Cir. 2014); Catholic Leadership Coal. of Tex. v. Reisman, 764 F.3d 409, 426 (5th Cir. 2014); Disc. Tobacco City & Lottery, Inc. v. United States, 674 F.3d 509, 522 (6th Cir. 2012); Am. Fed'n of State, Cty. & Mun. Emps. Council 79, 717 F.3d 851, 862 (11th Cir. 2013)).

So rather than assessing the CRA in its entirety we limit our assessment to the CRA's prohibition on donations to non-501(c)(3) organizations and individuals.  To

13

analyze the facial validity of this prohibition under our precedent, we "simply . . . apply[] the relevant constitutional test to the challenged statute." Doe v. City of Albuquerque, 667 F.3d 1111, 1124 (10th Cir. 2012). We do so because "[w]e have construed Salerno's no-set-of-circumstances language 'not as setting forth a *test* for facial challenges, but rather as describing the *result* of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard.'" Sup. Ct. of N. M., 839 F.3d at 917 (citing Doe, 667 F.3d at 1127; Marc E. Isserles, Overcoming Overbreadth: Facial Challenges & the Valid Rule Requirement, 48 Am. U. L. Rev. 359, 386 (1998)). Such a challenge goes to the "terms of the statute, not hypothetical applications" and we resolve it by applying the appropriate constitutional test "'without attempting to conjure up whether or not there is a hypothetical situation in which application of the statute might be valid.'" Id. (first quoting Doe, 667 F.3d at 1124, 1127; then citing City of Los Angeles v. Patel, 135 S. Ct. 2443, 2451 (2015)).

The next step, then, is to determine what constitutional test, if any, applies to the CRA's prohibition on donations to non-501(c)(3) organizations and individuals under the First Amendment.

V.

The First Amendment, applicable to the States through the Fourteenth Amendment, "prohibits laws 'abridging the freedom of speech.'" Free Speech Coalition, Inc. v. Paxton, 606 U.S. 461, 470 (2025). These constitutional protections

14

"do[] not end at the spoken or written word," but also protect conduct that "possesses sufficient communicative elements." Texas v. Johnson, 491 U.S. 397, 404 (1989). Thus, the CRA must implicate expressive activity to be subject to constitutional scrutiny under the First Amendment. See Evans v. Sandy City, 944 F.3d 847, 852 (10th Cir. 2019) (citing Cornelius v. NAACP Legal Def. & Educ. Fund., Inc., 473 U.S. 788, 797 (1985)).

To begin, then, we must construe the statute to determine whether it implicates expressive activity. Plaintiff challenges the CRA's ban on charitable donations to non-501(c)(3) organizations and individuals. Defendant concedes that donating money can be expressive by, for example, furthering a candidate's political speech. We agree. See, e.g., Buckley v. Valeo, 424 U.S. 1, 21 (1976) (contribution to a candidate constitutes "symbolic expression of support"); Cornelius, 473 U.S. at 799 (contribution in response to a charitable request for funds can "function[] as a general expression of support for the recipient and its views"); Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc., 6 F.4th 1247, 1254 (11th Cir. 2021) (concluding that Amazon's AmazonSmile program "convey[s] 'some sort of message' about the organizations it wishes to support" by selecting charitable organizations and donating money to those organizations).

Even still, Defendant argues—and the district court concluded—that the CRA does not prohibit speech. In so finding, the district court gave the CRA a limiting construction based on subsection (A)(1), which permits donations that are "expenditures of the campaign." See N.M. Stat. Ann. § 1-19-29.1(A)(1). During

15

litigation, Defendant submitted evidence that she "considers any funds spent for the purpose of conveying the political viewpoints of a candidate or publicizing their candidacy to be permissible 'expenditures of the campaign.'"  The district court accepted this interpretation as "undisputed" and concluded that the CRA does not prohibit any donation that constitutes speech.  On appeal, Plaintiff contends that the district court erred in relying on Defendant's enforcement promises to narrow the scope of the statute.  We agree.

In a facial challenge, "[a]dministrative interpretation and implementation of a regulation are . . . highly relevant" and federal courts "must . . . consider any limiting construction that a state court or enforcement agency has proffered."  Ward v. Rock Against Racism, 491 U.S. 781, 795–96 (1989) (first quoting Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 494 n.5 (1982); and then citing City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 769–70 & 770 n.11 (1988); United States v. Grace, 461 U.S. 171, 181 n.10 (1983); Grayned v. City of Rockford, 408 U.S. 104, 110 (1972); Poulos v. New Hampshire, 345 U.S. 395 (1953)).  Yet, we cannot rely on "faith in government representations of prosecutorial restraint" to rewrite unconstitutional laws.  See United States v. Stevens, 559 U.S. 460, 480–81 (2010).  And reading the CRA as permitting *any* expenditure that conveys a political viewpoint or publicizes the campaign under subsection (A)(1) "requires rewriting, not just reinterpretation" of the statute  Id. at 481.  Indeed, Defendant offered no argument for this limiting construction, and nothing in the CRA or its implementing regulations supports it.

16

Through its rulemaking authority, N.M. Stat. Ann. § 1-19-26.2, the Secretary of State defines "expenditures of the campaign" as "[e]xpenditures that are reasonably attributable to the candidate's campaign and not to personal use or personal living expenses." NMAC § 1.10.13.25(B)(2). The Secretary of State further defines "personal use" as the "use of funds in a campaign account to fulfill a commitment, obligation or expense of any candidate . . . that would exist regardless of the candidate's campaign . . . ." Id. Certain expenditures are per se "personal use" expenditures. For example, the rule prohibits all tuition payments unless they are "associated with training campaign staff." Id. § 1.10.13.25(B)(2)(d). The rule also prohibits funeral, cremation, and burial expenses unless they are incurred by the candidate's staff or arise out of campaign activity. Id. § 1.10.13.25(B)(2)(b). Likewise, the rule bars payments to family unless the family member provides a "bona fide service to the campaign." Id. § 1.10.13.25(B)(2)(h).

The definition of "expenditures of the campaign" turns on an expenditure's relationship to a candidate's campaign obligations rather than the political content of the expenditure. Thus, although a tuition payment to a non-campaign-affiliated student could convey a political viewpoint on education policy or make a salient point about the increasing burdens of student debt, such a payment remains impermissible. And although a candidate could convey a political viewpoint or publicize their campaign by buying themselves or a close associate an American-made car, this purchase is an expenditure for personal use rather than one "reasonably attributable" to a campaign. Defendant's suggestion that she might

17

withhold her prosecutorial discretion in that event cannot otherwise limit the CRA's plain reach.[5]

Further, even if "all applications relating to political speech are . . . campaign expenditures" as Defendant suggests, the CRA would still regulate expressive activity. Indeed, in this case, Defendant referred Plaintiff's donation to the State Ethics Commission and the Attorney General although he may have engaged in expressive conduct when he donated campaign funds to "voice [his] support for" a student "pursuing a career in legal advocacy."[6] While this donation may not have expressed a *political* view, "[t]he First Amendment does not protect speech and assembly only to the extent it can be characterized as political." Connick v. Myers, 461 U.S. 138, 147 (1983) (quoting United Mine Workers v. Ill. State Bar Ass'n, 389 U.S. 217, 223 (1967)); see also United States v. United Foods, Inc., 533 U.S. 405, 413 (2001) ("[S]peech need not be characterized as political before it receives First Amendment protection."). Under Defendant's own reading, then, the CRA's

---

[5] The New Mexico State Ethics Commission, writing as Amicus in support of Defendant, also urge us *not* to adopt Defendant's limiting construction. According to Amicus, if subsection (A)(1) permits a $200 gift for a summer program in support of the candidate's political view on education, or payment of an abortion for the same reason, the candidate could spend all their campaign funds paying for college tuition and abortions, presenting a "clear threat of quid pro quo corruption and vote buying."

[6] We do not express a view on whether Plaintiff has alleged facts sufficient to demonstrate that he engaged in expressive conduct when making this donation.

18

prohibition on donations to non-501(c)(3) organizations and individuals facially implicates expressive activity and is subject to First Amendment scrutiny.[7]

VI.

The district court based its order granting summary judgment for Defendant and denying Plaintiffs motion for a permanent injunction on the conclusion that the CRA does not implicate the First Amendment.  Having concluded otherwise, we vacate the district court's order.  Rather than decide the proper constitutional test, and rather than apply this test to the CRA's challenged prohibitions in the first instance, we believe remand is prudent.

To begin with, the district court did not pass upon these questions in the order on appeal.  The district court understood Plaintiff to raise a facial overbreadth challenge and not a traditional facial challenge.  And the district court's conclusion that the CRA does not regulate speech (which we overturn) also meant it did not need to subject the CRA to any First Amendment scrutiny.  Typically, we decline to decide

---

[7] Sometimes, courts employ the canon of constitutional avoidance to construe "ambiguous statutory language . . . to avoid serious constitutional doubts." F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 516 (2009) (citing Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council, 485 U.S. 568, 575, (1988)). This interpretive tool is unavailable here for two reasons. First, as discussed above, the CRA is not "readily susceptible" to Defendant's construction and we "will not rewrite a . . . law to conform it to constitutional requirements." See Stevens, 559 U.S. at 481 (quoting Reno v. Am. Civ. Liberties Union, 521 U.S. 844, 884–85 (1997)). Second, because Defendant's interpretation still implicates the First Amendment, it would not "avoid serious constitutional doubts." Fox Television Stations, Inc., 556 U.S. at 516.

issues not passed upon by the district court in the first instance.[8] Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.")

We also think remand is appropriate given the posture of this case. Plaintiff's facial and as-applied challenges to the CRA have been split between this Court and the district court. Rather than decide each challenge separately, we think the district court should consider and dispose of them together. This will give one court the appropriate flexibility in determining the scope of any potential remedy. See Citizens United v. Federal Elec. Comm'n, 558 U.S. 310, 331 (2010) (explaining that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge"); Johnson, 491 U.S. at 403 n.3 (deciding to resolve a facial challenge as an as-applied challenge). Remand will also consolidate Plaintiff's facial challenge with the briefing in the as-applied challenge, which has continued before the district court but is not before us.

VACATED and REMANDED.

---

[8] The district court addressed some of these questions in its order granting in part and denying in part Plaintiff's motion for a preliminary injunction. Even still, the district court did so at a preliminary stage in the proceedings and in the context of an overbreadth, rather than a traditional, facial challenge. The district court did not reach these questions in the order on appeal before us.